Good morning. Good morning. How are you? Good morning, Your Honor, and may it please the Court. My name is Mike Vasco with the Foster Pepper Firm in Seattle, and I'm representing the appellant, Olympic Eagle. I'd like to reserve five minutes of my time for rebuttal. We'll try to help you, but keep your eye on the clock. I will do so. I've been warned. Okay. Congress passed the Federal Arbitration Act to provide not merely for arbitration, but for a fair and impartial one, and one that appears to be so. The arbitration that is the subject of this appeal did not give the appearance of being either impartial or fair. The arbitrator failed to disclose before he was selected that he was entitled to a stream of income from the prevailing party, Monster Energy. And the arbitrator violated Wait a second. He's entitled to a stream of income from Jams, not from Monster, right? He is an owner in Jams. He failed to disclose that he is an owner in Jams. But he doesn't have any stream of income from Monster that you know of. As an owner in Jams, he is entitled to share the profits of Jams, which includes not only his own revenue, which he contributes to Jams, but also the revenue of all neutrals practicing or handling cases for Jams. Right. But my colleague's point is that it's just not a check being written by Monster. That is correct. It's indirect through Jams. It is indirect. Okay. Yes. He has a substantial interest in a firm, in the language of New Regency and Justice White's concurrence in Commonwealth Codings, he has a substantial interest in a firm that has more than trivial business with a party, Monster Energy. So the appellee comments that the arbitrator said, I have an interest in Jams' overall profits. But actually disclosed that I have an economic interest in Jams' overall financial success. What's the difference? The arbitrator disclosed that he, like other neutrals, has an economic interest in the overall success of Jams. And then in the next sentence of that disclosure, he said, arbitrators get their cases from Jams, I'm paraphrasing. So he did disclose that he had an economic interest, if you will, in Jams. I think fairly stating the obvious that Jams supplies him and other neutrals with cases. He implies, at least the way we read it, that he is like all other neutrals. He has, it doesn't say the same interest, but it implies that. And he certainly does not disclose that he has another interest, an ownership interest, and I know it's kind of the vernacular, but it does create a stream of income into his pocket from not just Monster, but from all clients, but Monster, of course, is one of the leading clients, so that's where the stream of income comes from. So had Judge Kennedy said, or arbitrator Kennedy, then previously Judge Kennedy, former Judge Kennedy, said, I am one of the owners of Jams, then would you not have this appeal, or at least on this issue? Well, that would be the minimum. What we have learned, and, you know, this is all outlined in our briefs, what we have learned is that there are several elements that go into this stream of income. It's not enough to know that he's an owner, because he's an owner of, you know, the Jams form, for example, discloses that there are two fees. There's an administrative fee paid to Jams, and then there's the arbitrator's hourly rate. Okay? What it does not disclose, and what we did not know until after the award was entered, is that there's this pooling. Jams is really like a law firm. There's leverage. One-third of the neutrals, we learned this very serendipitously from depositions occurring in an unrelated case. One-third of the Jams neutrals are owners, and two-thirds are not. Can we go back to my question, which I think was just a yes or a no, which is had Judge Kennedy or Arbitrator Kennedy said in his disclosure, by the way, I am one of a number of owners of Jams, would you still have an argument based on the impression of partiality? Yes. Okay. Yes, because I think in order to – So what else would need to be disclosed? In order to understand what that means, how that creates the stream of income, you have to understand something that is not disclosed, that up to 50 percent of the fees paid or earned by an arbitrator go to Jams to share his profits. You have to understand that. But isn't that obvious from the fact that the amount that a party pays, the arbitration service is greater than the arbitrator gets? Or maybe that's not obvious. I assume that was obvious to everyone, and so therefore the owner shares some of the profits. It was – well, A, it was not disclosed. B, it was not obvious to me. Okay. And this is discussed – this percentage issue was not discussed in the Consala case. It's not in that record, but it is discussed in the Ron Nessam article, which was kind of the eureka moment for us. So there – if it's like a law firm, at least a lot of law firms have partners with different levels of compensation. They don't all make the same. That may be true at Jams, too. So there may be people who make just a little bit of money because they're an owner, and then people who make a lot of money because they're an owner. Do you think they need to disclose exactly their monthly income from Jams? I mean, what do you think needs to be disclosed here? No, and we actually – we have the answer to that question. We attempted to get an answer from Jams and did not receive one. But in the depositions from this unrelated case, the Jams executives testify that each owner has the same share. Okay. There may be other – I mean – So do you need to know how big that share is? I mean, maybe some years Jams is not doing much business, and they're not that different in terms of what they make from the people who are not owners. Does it matter year by year? I struggle to answer that question because I think it's up to Jams and the arbitrator ultimately to tell us what we need to know in order to understand whether he has the appearance of impartiality or not. So the people who are not owners. Right. Do they have an interest in making the owners happy because they want to keep their job and probably they could be fired by the owners? Why are they not more biased in your view of who might be biased in favor of Monster? They may or may not be. But the point of Commonwealth Codings is that the parties receiving all the information then get to make that decision. But everyone knows, okay, we are here. We have to get rid of our investments. We make them all public. We have life tenure. If you wanted to come to court, we're here. We're waiting. You chose to go to arbitration. Everyone knows the arbitrators get paid. I don't understand once you choose to do that how you have this issue, especially once you say all the arbitrators, that if they're not owners they might have an interest, and if they are owners they might. That means arbitration, you should have come here instead. Not to push back, but we did not choose Jams. Well, right, but you signed a contract that said it would be Jams. Yes, it was a contract of adhesion. But you could have not entered the agreement. Okay, then there would be no relationship. But I think the point there is that you could negotiate. I mean, you're not such a small company. You could negotiate. We don't like Jams. We want some other. The arbitrator found it was a non-negotiable contract as a factual finding. It was a non-negotiable contract. Can I shift just a little bit? Because I understand Commonwealth to be a little different perhaps than my colleagues do. I see this as a two-part test. The first one, the Supreme Court said, was that the arbitrator needs to disclose to the parties any dealings which might create an impression of possible bias. So that's prong number one. But the important second one, which we've not talked about, is whether the arbitrator, end quote, has a substantial interest in a firm which has done more than trivial business with the party. That fact must be disclosed. Now, in this case, let's assume, as my colleagues do, let's just assume you knew that the judge here was an owner. That's not enough. But then later on you found out that Monster had 97 referrals to Jams. That's a lot. And does that not satisfy the second prong of what's necessary in this situation? Yes. Commonwealth Coding says that in order to preserve the appearance of partiality, even the slightest pecuniary interest in a party must be disclosed. So basically you have to disclose it. The burden is on the arbitrator, right, according to the case law? Correct. The arbitrator has to disclose it. What the arbitrator said here, if I understand it correctly, he said that he practiced an association with Jams. Each Jams neutral, including me, has an economic interest in the overall financial success of Jams. Well, that's cool. But he doesn't say he's an owner, and he doesn't say that you've had all these referrals from Monster or that there is a referral to the Jams Orange County branch of Jams. Are those elements that must be required? Is there a burden on the arbitrator to disclose those? Yeah, the arbitrator has the burden to show or to disclose the information that would allow the parties to decide. Right. No, exactly. Parties get to decide. The elements as I array them are, yes, he's an owner. That's how you know he has a potential to earn a stream of income. But it doesn't tell you anything about what that looks like. And can you tell me then, can you give me a list, please, of what the arbitrator should have disclosed? If we were to adopt the rule that you were urging here, for the next time that this arbitrator has an arbitration, what should he disclose? He should disclose that he is an owner. Okay. What else? He should disclose that, as an owner, he shares in the profits of fees generated in all of Jams' cases, up to, and you could probably arrange. I mean, it is a range, as I understand it. He should disclose, in some order of magnitude, the number of cases that are involved. This is information that is out there but was not disclosed. When you say number of cases involved, you mean number of cases by Monster? Number of all cases Jams has? What do you mean? By the party. By the party. And this is information that, at least in California, is collected for other purposes. So this should be disclosed. So it appears to me that in California it's required that arbitrators disclose this and it's publicly available. I found a whole list with Monster's cases and all these other companies that have many more cases than Monster at Jams. Why didn't you just look at that? Well, we didn't know he was an owner. Our understanding, based on the disclosures, was he would earn only his fees. He would receive his fees. In fact, the Jams – Well, but he said he had an interest in Jams' financial success or whatever the words were. So doesn't that suggest he has some more interest than just his fees? It did not to us. What was disclosed to us includes he's an independent contractor, as a Jams neutral. He is not permitted to receive anything of value from any party other than his fees. The entire panoply of evidence that was – or disclosures – made it appear that he was a normal neutral. Normal neutrals in arbitration earn their fees. That's what they earn. Back to our list. Yes. Could he have disclosed the dollar volume of the fees that Monster pays to Jams in addition to the number of cases? Is that required? Well, you get into the question of, based on the disclosure, is the additional information trivial? And so there is a point at which enough information is provided that you can create the – you have an understanding of his economic interest. New Regency deals with this. In New Regency, there was a generalized disclosure that the arbitrator had relationships with New Regency in the past, but not the specific disclosure of the relationship in that case. And TANASCA is another case where the Texas Supreme Court deals with this very specifically. I'm just trying to understand what you're urging us to do. And when you say that the arbitrator also should have disclosed that he shares in the profits of Jams, should he also be required to disclose his percentage interest in those profits? Well, again, the question is, you know, is there enough information provided to the parties to make an informed choice about whether he's partial? We believe that merely disclosing that he's an owner with an interest in this stream of revenue and that there are neutrals that are not owners is significant. Why? Why? Why does it matter that there are other neutrals who are not owners? Well, because they don't receive any additional revenue from the monster cases. They don't – they, you know, they may have some inchoate incentive to curry favor with clients, but they're not – they don't have a pecuniary interest. And the Commonwealth Codings decision focuses on pecuniary interest for the obvious reason, the potential corrupting influence of money. But if the pecuniary interest is an important factor then, doesn't it matter whether an owner's interest is in one one-hundredth of a percent or two, three, four, five percent of Jams? In – To see if it's trivial or not trivial. In the Ninth Circuit's decisions, that has not been considered in that way. So in Zilvedi, it was a partner in a law firm, had 19 cases that he had not disclosed. In New Regency, the arbitrator became an executive. There's probably some point – Well, the Supreme Court says trivial, right?  Trivial is a standard. More than trivial. Yes. So if the burden is on the arbitrator so that the party can make a decision, it's going to be on a case-by-case basis, right? Correct. You can't just have a bright-line rule that's got to be a certain percentage or it doesn't count. The point is the persons that are arbitrating need to be able to decide whether they think that the arbitrator can be truly neutral. Right. I mean, we're all presumably people who have had some experience in life, and you know if you've got an arbitrator that has a large amount of money coming in based upon repeat referrals, if you look at the statistics, it's pretty clear that there is a heavy-weighted statistic that they tend to favor the ones that are going to continue the income. That's human nature. It shouldn't be. It is. That's the fact. So I guess what we're struggling with here is based on Commonwealth, based upon the burden of proof, as the case law makes clear, being on the arbitrator, it's really on almost a case-by-case basis, but they at least have to disclose an ownership interest, and if it's more than trivial, whatever that happens to be in the case, they probably ought to be pretty specific so that the people in the arbitration can make an informed judgment as to whether or not this person is likely to be neutral. Is that a fair statement? That's a fair statement. I believe that's a fair statement of current law, and that's all we're asking. We're not asking for some new rule of incremental disclosure, but Commonwealth Codings has held up for 51 years as a standard. I think someone once said we're becoming an arbitration nation. Arbitration is growing in importance. And you had this contract that you say you had no ability to negotiate, which probably means Monster was using it for everyone they were dealing with, which said that arbitration had to be at jams. Why didn't that tell you that Monster was an important client of jams? You know, I think we knew that there was a relationship. Certainly we knew there was a relationship between jams and Monster. We knew that. There's no question about that. And you knew that the arbitrator had a financial interest in the success of jams. Economic interest in the success of jams. Yes, we knew that. But is that really the key here? Because jams have got a lot of people, and the fact that the contract says you're supposed to go to jams doesn't determine which arbitrator is there. Correct. So you could go to jams, return to the contract, and have someone who had no ownership interest and somebody who had no stream of income coming from that party, right? Correct. So that doesn't solve the issue, right? I have two minutes left. You want to save it? Okay, go ahead. That's fine. Save the rest of it. We have a burning question. Sure. No, that's fine. Thank you. All right. We're in no way referring to any of you as Monsters, but you're representing them, so here we go. Good morning, Your Honors. Good morning. May it please the Court, I'm Tanya Shierling, and it's my privilege to be here today representing Monster Energy Company. Your Honors, this Court should affirm the judgment of the District Court granting Monster's petition to confirm the arbitration award against Olympic Eagle and denying Olympic Eagle's cross-petition to vacate the award. As Your Honors are probably aware, Monster Energy Company is an energy drink company located in nearby Corona, California, and Olympic Eagle is a beverage distribution company that's been in business for over 60 years in western Washington as part of the Anheuser-Busch distribution system. Both parties are sophisticated commercial entities. I had a nice outline here that I was going to go through, but I did want to address some of the comments from my colleague and the Court's questions. First, Mr. Vasca made the statement that Judge Kennedy disclosed that he was like all other neutrals. That is not what he said. The disclosure says each Jams neutral, including me, has an economic interest in the overall financial success of Jams. That is not a false equation on its face. The text doesn't say I'm the same as everyone else. But if he has the burden of proof, though, of arguendo, is it more than that required? I mean, everybody that's ever practiced with a neutral understands that they have a stake in the outcome of the business because referrals come through that. But isn't there a requirement under Commonwealth that ownership itself must be specifically disclosed, at least sufficiently, that the party understands that's what you're talking about? Under this Court's controlling precedent, Your Honor, the answer is no. And one of the issues that counsel did not address... So our controlling precedent controls over the Supreme Court? Well, Your Honor, the Supreme Court hasn't addressed the issue of constructive notice, which this Court has in the Fidelity case. And once Olympic Eagle was on notice, that the arbitrator had an economic interest in Jams. And our submission is economic interest is a broad disclosure. The problem with requiring specific disclosures is that it's never enough. And that comes into play with one of the other points that this panel has raised. It was interesting to me that Mr. Vasca could not answer Judge Simon's question. What's enough? Once you start making specific disclosures, they are to the exclusion of every... You can never disclose every specific. No, but isn't, I'm an owner, I'm a co-owner. We may not know then what more needs to be required, but shouldn't that be disclosed? Because shouldn't a party, when they decide which of the Jams arbitrators they're going to select, and here the parties were given a choice among Jams arbitrators. They weren't given a choice to non-Jams, but they were given a choice which Jams arbitrators. Shouldn't a party be able to say, I would like an arbitrator from Jams who's not a co-owner and doesn't have a stake in the repeat business? The disclosure that was made includes the possibility of an ownership interest. That fact is conceded by Olympic legal itself. Right, but the burden is on the arbitrator, and perhaps the arbitrator should have disclosed, I'm an owner, so that then the parties can then decide, do you want an owner or a non-owner? Should the arbitrator have disclosed if, for example, he was an owner of the building in which Jams operates? Does it matter how much the arbitrator depends on his income from Jams? Do we need to know what his marital community status is? Do we need to know if he's in debt? Well, counsel, with respect, I think you're being facetious about this. The reality is that the people who are going to arbitrate need to know whether the person that's supposed to be neutral has a stake. All of us, for example, if we have a single share of stock, anything, we can't be involved in the case. We must recuse ourselves. A single share, no matter what it's worth, a penny, a nickel, anything, because the U.S. Courts and the Rules Committee have decided that you want to be like Caesar's wife, beyond reproach. I think that's what the Supreme Court was really talking about here. They want to know, they want people to know what the deal is here. There can't be a bright line rule, as you point out. I mean, there are lots of things you could find out, and you could go on the Internet, like my colleague points out, but the burden is not on the person that's going to arbitrate. It's on the arbitrator to tell what the arbitrator feels is necessary for a reasonable person in that situation to make an informed decision whether to use that particular arbitrator. Do you agree with that?  Okay, tell me why not. And here's why. In Commonwealth codings, no disclosure at all was made about an existing potential possible connection between the arbitrator and the party involved. So the party, the opposing party, had no idea. In fact, the words are not even an intimation of the relationship. Here, there is far more than an intimation. Like what? The arbitrator disclosed, I have an economic interest in the overall financial success of Jams. Isn't that basically trivial? I mean, not the interest, but isn't that information essentially non-informative? Because obviously anyone who is put out by Jams as a potential Jams arbitrator has an interest in the success of Jams because they're putting him out. That doesn't tell the recipient of that information anything meaningful, at least not like an I'm an owner, too. That may be true, Your Honor, but this court only requires disclosure of the relationship, not the details of the relationship. And a broader, more important point is that the relationship is I have an economic interest in this. So why isn't the relationship I'm a part owner? I'm not going to tell you how much I own, but now you can make a decision based on, number one, you know that I'm an owner, and number two, I'm not going to tell you how much I own. Olympic Eagle knew that an economic interest includes an ownership interest. It said in its letter to Jams, we would like to verify whether or not Judge Kennedy has an ownership interest such that he would have an economic interest. That was also a finding of the district court. A disclosure of an economic interest encompasses and includes an ownership interest. But with respect, that flips the burden on its head. And in this circuit, Your Honor, constructive notice is sufficient. But constructive notice has to be of something. The constructive notice here is that like I think his language was like all the other Jams arbitrators. Your Honor, he did not say like all other arbitrators. Okay, let me read it. It says that each Jams neutral, including me, has an economic interest in the overall financial success of Jams. That's what he said. That's ER 241, right? Correct. He also said that I and other Jams neutrals have performed ADR services for parties, these parties in the past. Right. We may have. We may do so in the future. Right. You are on notice that I may have done substantial business for this. Well, that's not what he said. He didn't say the latter part. He just said that he'd done some past work with them. And he even cited something where he had ruled against Monster. And that raises another point, Your Honor, that I wish to raise, and that is both the facts in this case and the law do not support the conclusion that even an ownership interest in an arbitration service provider, which is a business that trades on impartiality, creates a reasonable impression of partiality. The only two cases in which vacator was the result, as a result of a failure to disclose, involved partial relationships, those relationships that incentivize, if not mandate, partiality to a party, an attorney-client relationship and an employment relationship. But, again, counsel, you're obviously a very intelligent lawyer, very successful lawyer, but let's talk turkey here. If you, let's just say that you're an arbitrator, and if you have an incentive to rule for a particular party, they keep coming back again and again and again because they like the way you rule, and it goes in your pocket, doesn't common sense tell you that human beings will act in that way sometimes? At least enough so that the people who are going to use the arbitration service need to have the right and the information to decide whether they want to use them. As my colleague pointed out here, yeah, they have to use jams, but there are lots of people in jams who have no relationship with Monster per se, have no repeat business, and if I understand the record here, there are 97 referrals here. Your Honor, two points on that. First of all, of the 97 cases, Olympic Eagle was aware of over 60 of them. So we're talking now about some of these. When were they aware of this? They were aware of that before. They were aware of that when they took my client's representative's deposition, if not before then. And was that before or after the award was taken? Long before the award was given. The depositions were taken in about May of 2016. But he was already the arbitrator at that point, right? Was the arbitrator, but that did not preclude Olympic Eagle from objecting. Well, could they have removed him and gotten all their fees back at that point? They could have made an objection to jams and said, we want more information or we want to disqualify this arbitrator. But isn't, again, just thinking commonsensically, if you're going to have an arbitrator, either want them to be neutral at the beginning or not at all. And it seems to me to say that they discovered through constructive notice somewhere along in the process, when hundreds of thousands of dollars of fees had been spent and rulings had begun to be made, that you could then object to jams about that person. I'm not sure that makes it. It absolutely does, Your Honor. It's very risky to object once the person's been selected as an arbitrator because when you aim for the king, you better kill him. And there were cases, Your Honor, where the party objected to the arbitrator, the arbitrator refused to recuse himself, the party then sought vacatur in the court, and the court awarded vacatur. So it is incumbent upon the party, once it discovers information, rather than to sit on that information and wait and to see what the result will be. But if the burden is on the arbitrator to disclose before the arbitrator is selected, then it seems a very simple thing to say, I'm an owner. And I've done such and such business with these folks over a period of time. There is a fact in the record that on its face dispels the notion that an ownership interest in jams would necessarily cause this arbitrator or any arbitrator to be partial to Monster. And there's no indication that he would be partial to Monster as opposed to Olympic Eagle. Didn't he say this is a very, very important case for Monster? I mean, he recognized that if the ruling went the other direction, Monster could be hurt very badly, Monster could then decide we don't like jams and we're taking our non-negotiable business somewhere else. Didn't he say that? He didn't say all of those things. No, but he said this is an important case to Monster. He said this is an important case to Monster. In fact, that fact weighs in favor of finding against Monster because if there were an award in favor of Olympic Eagle... You're saying you want us to find against Monster, did you say? Maybe I misunderstood. No. If there were an award against Monster, all of the other hundreds of distributors that were also terminated in this transition process and who are members of the National Beer Wholesalers Association, which is a powerful lobbying force and has many members and lots of support, would be running to jams to litigate their disputes. And Monster might then decide to reallocate its contract to a different arbitration service. It doesn't. It's a contract. It requires bilateral consent. But it can change the contract going forward, right? All of the contracts involved were 20-year contracts, Your Honor. Okay. And the point was they'd been terminated, right? It was a question of how you would deal with the conflicts that arose from the termination. Right. And in this case, Judge Kennedy had previously served as an arbitrator involving a Monster case, and he ruled against Monster. And was that, just to be clear, because I think there's reference to 97 cases, those weren't Judge Kennedy's cases, right? They were jams cases, but 60 of those were arbitrations that involved terminated Anheuser-Busch distributors. So one of the things that seemed notable to me in looking at these cases was that where there was a financial interest that needed to be disclosed, it seemed like it was not through the avenue of income from being an arbitrator. It was through some other financial relationship with the client that then came to the arbitration. Is that a correct impression? That is a correct impression, and that is a critical impression. And that is the reason I've submitted that an interest, whether it's an ownership interest or an interest in fees, in an arbitration service provider, has never been found to be the kind of pecuniary interest that gives rise to a reasonable impression of partiality. But the numbers here are pretty big. I looked at your math on page 18, and it didn't compute for me, because I figure if there were, you think as you put it, 13,000 cases per year. Well, and this one was, and there were $160,000 in fees in this case. That's more than $2 billion in revenues, yet you're talking about jams only having $50 million in annual profits. And if we assume the 50% profit figure, so that's $1 billion in profits, yet you tell me there's $50 million in profits. Even though the numbers are pretty big, that's a 20 times difference. Your Honor, there is no presumption that any pecuniary interest in jams would benefit Monster instead of Olympic Eagle. But that's the human nature aspect of it. That's why we have no equity interest at all. To follow that logic, it's human nature also to find in favor of lawyers who appear in front of you frequently in arbitration. Oftentimes it's lawyers who are able to direct where a case may go for arbitration. But not in this case, because of the contract. It was the non-negotiable. You had to go to jams. A finding that it was non-negotiable is a little bit misleading. There was actually a challenge to the contract before the district court, a challenge that the arbitration provision was unconscionable. The district court found it is not unconscionable. Olympic Eagle could have said, you know what, I don't want to do this deal. And I don't want to earn the millions of dollars. They haven't appealed that now or before, the unconscionability ruling. Correct. They have never appealed the unconscionability issue. But Olympic Eagle was represented by a multinational law firm, Brian Cave, and a large law firm out of Seattle. Monster was represented by my 35-lawyer law firm in San Diego. So if there is a bias to prefer those who you do business with frequently, there would be as much, if not more, of a preference for lawyers who can direct business your way. But with respect, counsel, you know, each of us has been with a big law firm at one point, and the reality is, and I set up a little firm after that, the reality is how much business the firm does, not how big the firm is. So if your firm does a whole bunch of business and the big firm doesn't do very much business with it, they're more interested in the small firm. But the reality here is not what happened in this case, but rather the rule that the Supreme Court established and the burden of proof, right? That is true. Burden of disclosure, I should say. Well, and again, in Commonwealth codings, it wasn't a waiver case. The party had no idea that there was a relationship between the arbitrator and the other party in the arbitration. Here, Olympic Eagle knew of the alleged relationship that it's complaining about now. But it didn't know the facts that the Supreme Court, I think, required under Commonwealth. Didn't know about the ownership. You say constructive notice provided it. Didn't know the quantity of work done which could influence the decision. Again, if they had known and went forward, hey, that's different. And in that case, Your Honor, the services being provided were not neutral services. In Commonwealth codings, the party was an engineering consultant. I get that. I get the facts are different in that case, but it doesn't change what the Supreme Court said. They were trying to give us some direction in connection with the FAA, and as you very well know, the FAA kind of rules our lives these days. So people need to understand how it works and what the rules are because the arbitrators are doing more and more and more of the work that the courts used to do. So the question is what rules apply to the arbitrators. And this court has passed on a couple of cases that raise this very issue. In this Safia Nathan case in the Northern District of California, the district court rejected a petition to vacate that argued that the arbitrator failed to disclose his pecuniary interest due to alleged repeat players. The district court found no authority, no authority for the proposition that arbitration fees from parties or firms that employ arbitration more than once may constitute a pecuniary interest requiring disclosure. But that's the district court, and he's talking about somebody didn't disclose an ownership interest. This court affirmed the district court's ruling. Okay, but what's the name of that case? Safia Nathan v. Smith Barney. And in that one, was any ownership interest involved? There was a pecuniary interest. That's not an ownership interest necessarily. A jams arbitrator has a pecuniary interest in the result. That comes from the Latin for cows, which is a common term for money, right? And in this case, they have a monetary interest in the result. There was another case involving the same issue, and that was the Picorni case, where the district court denied a motion to compel arbitration in part because the arbitration provision required using arbitrators that were trained by one of the repeat players. Absent the partiality created by that training by the party, the court had no problem rejecting the notion that jams' for-profit status would make it inherently biased in favor of a party that is seeking significant business. What harm would come, if any, from a rule that says if an arbitrator has an ownership interest in an arbitration firm, the arbitrator must disclose that to the parties and must disclose the number of disputes that that firm has handled for any of the parties previously? Your Honor, I'm almost out of time, if I may have the time to answer your question. I think you might want to answer that question. I think I do, too. Your Honor, the answer is there's then the question is what's enough? It's never enough to disclose that I'm an owner. What are we really trying to get at? What we're trying to get at is what is the level of the arbitrator's interest in the outcome? Does it depend on only how much my interest is in this business? What if I'm independently wealthy? It doesn't matter to me what I earn from jams. It becomes a subjective slippery slope, and doing that ultimately results in the very judicial hostility to arbitration that the FAA was passed in order to eliminate. Okay. You wanted to make one other point that didn't relate to his. What is that? I can't remember. Okay. That's okay, then. Well, thank you very much. Thank you. We'll hear your rebuttal. I'm interested in hearing your response to that last point. When is enough enough? Commonwealth Codings has been the law for 50 years. It's not a specific rule. It's a rule of law, but it's not specific as to what has to be disclosed. But the interest there was from a relationship, a financial relationship with one of the parties to the arbitration, rather than a financial relationship with the arbitration entity. Can you point to it? Justice White in Commonwealth Codings first enunciated the rule that showing a substantial interest in an entity that has more than trivial business with a party is sufficient to meet the Commonwealth Codings test. This court in New Regency has adopted that test. I believe that is precisely. Has our court ever talked about an interest that comes from the arbitration entity rather than comes from a relationship with an actual party before you? No, not in a disclosure case. And I will say because of a lot of serendipity or maybe luck, we actually have, for the first time, I think this is the first court that actually has a window into how a for-profit, James is a for-profit arbitration service provider incensed some of its owners. So this is, in that sense, it is an issue of first impression. But I believe the rule that Commonwealth Codings enunciated as adopted by this court applies firmly to effectiveness. Can you give me any comfort at all that we're not opening a really messy can of worms if we say there's a rule that now says, based on Commonwealth Codings, if you have an ownership interest in an arbitration firm, you must disclose that ownership interest and the number of or dollar value of basically repeat player business between one of the parties and that firm. And then counsel for Monster says, what more do you have to disclose? Are we opening a really ugly can here? Well, California in consumer arbitrations requires disclosure about the arbitration service already. This is not a consumer arbitration. So a legislative process has looked at that can of worms and said, even if it is a can of worms, and I don't think it is, Commonwealth Codings is. So what does California require? It requires disclosures instead of just about the arbitrator, which is what occurred here, it requires disclosures about the arbitration service provider and at some level his interest in or his or her interest in that. And it lists all the cases in the last five years that the arbitration service used for each company. Only because Jams is on there because there was one, I'm sorry, Monster is on the Jams list because Monster had one consumer arbitration case. If it had not had that case, those would not be listed. And that's in our record. But then they have to list, okay, maybe that's right, but once they have one, they list the others too. There are lots of Monster cases. Yes, and we fully laid out everything we could find about the background of Jams once we looked at Jams after the arbitration where it's in the record. But the reality here is, I think, that if the burden is on the arbitrator to disclose, the fact that things might be on the Internet and so on, I mean, you go to the dark web, you can find anything you want, but that's not what we're talking about here. The question is, is there enough information given to the arbitrating parties to be confident and comfortable that the arbitrator is not going to have an aspect of bias into the Commonwealth approach? It doesn't have to be a bright-line test. People can make their decision. It needs to be disclosed before the arbitration begins. Is that a fair statement? Yes, and in Commonwealth codings, this very concern was raised, and the court said we believe the parties will act reasonably in most cases and that courts will be able to figure out if what was not disclosed is trivial.  Thank you, Your Honor. Thank you. Have a nice morning. Thank you both for your argument. We do appreciate it. It's very helpful. The case just argued is submitted, and the court stands not just in recess, but we're adjourned for the week. Thank you. All rise. This court for this session stands adjourned.
judges: M. Smith, Friedland, Simon